# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Sophie Cohen Vorburger

_____
Write the full name of each plaintiff.

**18 CV 5155**

CV _____

(Include case number if one has been assigned)

-against-

JP Morgan Chase National Association

## COMPLAINT

Do you want a jury trial?
☑ Yes   ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑   **Federal Question**

☑   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

TILA , RESPA , Fraud , wrongful foreclosure , FRAUD

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _Sophie Cohen Vorburger_ , is a citizen of the State of
(Plaintiff's name)

NEW YORK
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _JP Morgan Chase Bank Association_, is a citizen of the State of
(Defendant's name)

_Ohio /LA._

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of    _3401 Morse Crossing, Columbus OH, 43219_
and _700 Kansas Lane, Monroe, LA. 71 203_

If the defendant is a corporation:

The defendant, _JP Morgan Chase_, is incorporated under the laws of

the State of _Ohio / LA_

and has its principal place of business in the State of _Ohio / LA_

or is incorporated under the laws of (foreign state) _Ohio / LA_

and has its principal place of business in _Ohio / LA._

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_Sophie_              _Cohen_       _Vorburger_
First Name            Middle Initial      Last Name

_329  West 108 th street, # 1B_
Street Address

_New York_                    _M_           _10025_
County, City                  State         Zip Code

_917 545 3024_
Telephone Number                           Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:    JP Morgans Chase Bank N.A.

First Name          Last Name

Current Job Title (or other identifying information)

also ~~va~~ ~~~~ MONRoe , LA

Current Work Address (or other address where defendant may be served)

Columbus          Ohio

County, City          State          Zip Code

Defendant 2:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

Defendant 3:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

**Defendant 4:**

| First Name | Last Name |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |

## III. STATEMENT OF CLAIM

Place(s) of occurrence: NY and Ohio and LA

Date(s) of occurrence: September 2014 (Before and after)

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

( See attached )

I am asking for a stay of eviction and TRO against SPMC and City Marshall - there is immediate danger of irreparable harm to me and my children -

eviction on or after Aug 15, 2018 (See EXH. A)

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

JPMC has inflicted intentional infliction of emotional Distress - JPMC did not have the right to foreclose on my apartment and when they did they committed Fraud -

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

(1) Vacate the Foreclosure sale of Sept 2014

(2) Return the apartment located at 329 W 108th Street, NY NY 10025, Apartment 1B to the Plaintiff.

(3) money damages and punitive damages for wrongful Foreclosure and wrongful acts.

(4) for misleading the Courts and perpetuating Fraud

(5) stop the eviction

Page 6

I Am asking Respectfully that this Court, grants me (Plaintiff) a stay of eviction against JP Morgan Chase National Bank for the Subject premises, Currently Scheduled for on or after Augs 15, 2018 pursuant to the Notice of eviction dated August 7, 2018 (EXH A until final determination of the instant action and awarding Plaintiff such other and further relief that the Court deem Jot, equitable, and proper under the Circumstances.

I am respectfully requesting that this Court orders JP Morgan Chase Bank WA and any City Marshall are hereby stayed from undertaking any actions to

(1) execute the Notice of eviction dated Aug 7, 2018

(2) Evict Plaintiff and her children from the Subject Premises

(3) recover possession of the subject premises.

And it is further requested that Plaintiff be given the opportunity to oppose any defendant opposition at least 7 days in advance of Hearing as plaintiff is Pro se

ordered that a copy of this order be served
(together with the application / affidavit) and
exhibit X to JP Morgan Chase National
Association and to City Marshall by
express mail on or before the ____ of August
2018 shall be deemed good and sufficient
Service thereof —

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 08 / 17 / 18 | |
| Dated | Plaintiff's Signature |

Sophie    Cohen    Vorburger
First Name          Middle Initial          Last Name

329 W 108 th St , # 1B
Street Address

New York    Ny    10025
County, City          State          Zip Code

917 545 3024
Telephone Number          Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Additional information

Facts , Statement of Claim ,
Request for Emergency TRO.

*Sophie Cohen Vulbinger*
*Plaintiff*
*Vs*
*JP Morgan Chase National Bank NA*
*Defendant .*

*Request for*
*Emergency TRO*

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

*Plaintiff is* the current occupant of the premises commonly known as 329 W

108th Street, Unit 1B, New York, New York 10025 (the "subject premises"), which has been my

family's home for almost thirty (30) years. In December 2003, *Plaintiff* became a shareholder of

three hundred (300) shares of capital stock in the cooperative 329108 Owners Corp (the "Co-Op"),

and the proprietary lessee appurtenant to the subject premises.

On or about May 11, 2005, *Plaintiff* entered into a Loan Security Agreement

(the "Security Agreement") with Washington Mutual Bank, FA ("WaMu"), wherein WaMu was

granted a security interest in *defendant* shares of stock in the Co-Op. A true copy of the

Security Agreement is attached hereto as **EXHIBIT** *B*

Subsequently, on or about January 15, 2013, WaMu purportedly "assigned" their

interest in the Security Agreement to ~~Petitioner~~ *defendar* JPMorgan Chase Bank, National Association

("~~Petitioner~~" *defendar*). True copies of the New York City Department of Finance Recording and UCC

Filing Statement are attached hereto as **EXHIBIT** *C*

On or around September 4, 2014, *Defendant* conducted a non-judicial foreclosure

sale of the subject premises without complying with a variety of statutory requirements therefor. A

true copy of ~~Petitioner~~ *defendant*'s Certificate of Sale and of Fact is attached hereto as **EXHIBIT** *D* Upon

information and belief, *defendant's* purported non-judicial foreclosure of the subject premises was

rendered invalid by extensive procedural deficiencies, severe misconduct and/or fraudulent actions

undertaken by *defendant* in connection with the foreclosure.

Hence the *Plaintiff* t was deprived of her rights and of the possibility for her to bid

on her own apartment. *Plaintiff did not discover that JPMC took*

sold her apartment to themselves until October/
November 2017 - JPMC has violated the
plaintiff's rights and is now seeking to evict
her from the premises at 329 W 108th ST, # 1B
New York NY 10025 -

## RESPONDENT'S MERITORIOUS DEFENSE TO THE ACTION

Upon information and belief, Defendant's purported non-judicial foreclosure of the subject premises was rendered invalid by the Defendant's failure to comply with numerous statutory requirements, including but not limited to, the following:

a. Defendant's non-judicial foreclosure is invalid and in violation of NY UCC § 9-611(b)-(c), as Petitioner failed to furnish the statutorily required notice upon Plaintiff prior to the disposition of the cooperative collateral interest;

b. Defendant's non-judicial foreclosure is invalid and in violation of NY UCC § 9-611(f), as defendant failed to furnish a ninety (90) day "Help for Homeowners" notice upon Plaintiff prior to the disposition of the cooperative collateral interest;

c. Defendant's non-judicial foreclosure is invalid and in violation of NY UCC § 9-612(b), as defendant failed to furnish a ten (10) day "Authenticated

Notification of Disposition" notice upon Plaintiff prior to the disposition of the cooperative collateral interest statement;

d. i ~~Defendant~~ non-judicial foreclosure is invalid and in violation of NY RPAPL § 1306(1), as *defendant* failed to e-file a statement with the New York State Department of Financial Service within three (3) days of mailing the "Help for Homeowners" notice prior to the disposition of the cooperative collateral interest.

e _ Defendant notice of eviction is invalid and in violation of Due process _

**WHEREFORE**, it respectfully requested that this Court grant ! *Plaintiff* 's Order to Show Cause herein in its entirety and award such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

August 15 2018
Respectfully submitted,
New York, New York

SOPHIE CAHEN VORBURGER
Respondent Pro Se

State of New York
County of New York

Sworn to before me this
1_7_ day of _August_ _____ 20_18_

KENNETH CARDEZ
Notary Public, State of New York
Reg. No. 04CA6351839
Qualified in New York County
Commission Expires Dec. 12, 20 20



| | |
|---|---|
| CIVIL COURT OF THE CITY OF NEW YORK | INDEX NO. L/T **79584/17** |
| COUNTY **NEW YORK** | MARSHAL'S DOCKET NO. **17059** |

**JP MORGAN CHASE BANK NATIONAL ASSOCIATION**

Petitioner
*Landlord*

against

Respondent
*Tenant*

**SOPHIE CAHEN AKA SOPHIE CAHEN VORBURGER**
**329 W 108TH STREET   # Rooms: ALL**
**NEW YORK, NY 10025**
**UNIT 1B**

**City Marshal**

**EDWARD F. GUIDA JR. #14**
**47-26 104TH STREET**
**CORONA, NY 11368**
**(718) 779-2134**

*"John and Jane Doe"*   Respondent
*Undertenant*

*Name of Tenant and/or undertenant being fictitious and unknown, person intended, occupying apartment set forth below.*

**IMPORTANT** - **PLEASE BE ADVISED YOUR EVICTION MAY TAKE PLACE ON**   **OR THEREAFTER,**
                       **UNLESS STAYED PER COURT ORDER.**

**IMPORTANTE** - **USTED PUEDE SER DESAHUCIADO, EN FECHA**   **O DESPUES,**
                        **A MENOS QUE POSEA UNA ORDEN DE LA CORTE.**

**08/15/2018**

# NOTICE OF EVICTION

## Alternative Service / Mailing

To the above named tenants and undertenants:

Please take notice that the Court has issued a warrant for your eviction. If you fail to vacate the described premises,  **YOU MAY BE EVICTED, WITHOUT FURTHER NOTICE, ON  THE SIXTH BUSINESS DAY AFTER THE DATE OF THIS NOTICE**  or any business day thereafter. "Business days" are Monday through Friday except legal holidays.

**The ONLY way you can stop this eviction is if a Court issues an order to show cause that stays your eviction. You may apply for such an order at the civil court,  Landlord - Tenant part, in your borough.**

If a Court stay of your eviction is in effect, you will be evicted only if the stay ends or is vacated by the Court. If the Court has already ordered that you may be evicted if you fail to make payment or comply with the Court's order by certain date, your failure to pay or comply with the Court's order by that date may result in your eviction without further notice.

If you are dependent upon a person in the military service of the United States, advise the clerk of the Court immediately in order to protect your rights.

If you need legal assistance, the Legal Aid Society may be able to assist you (check telephone listing in your borough). A senior citizen who needs legal assistance may contact the New York City Department for the Aging, 2 Lafayette Street, New York, New York 10007, (212) 442-1000.

If you receive public assistance, notify your caseworker immediately. The Human Resources Administration may be able to help you with back payments whether or not you receive public assistance. Call  **(877) 472-8411**  for information.

| DATE OF NOTICE | FECHADA |
|---|---|
| **08/07/2018** | |

# NOTIFICACION DE DESAHUCIO

## Notificación Alterna / Postal

A los susodichos inquilinos y sub-inquilinos:

Tenga a bién notar que la Corte ha emitido una orden de desahucio en contra de usted. Si no desaloja al local descrito,  **USTED PUEDE SER DESAHUCIADO, SIN NOTIFICACION ADICIONAL, EL SEXTO DIA HABIL  A PARTIR DE LA FECHA DE ESTA NOTIFICACION** o en cualquier día hábil de ahí en adelante. Los "días hábiles" son Lunes a Viernes, excepto los días de fiesta legales.

**Usted puede detener este desahucio   SOLAMENTE si una corte emite una orden judicial instruyendole a usted a mostrar motivos justificantes para suspender su desalojo. Usted puede solicitar esa order (Order to Show Cause) en la Corte Civil, Sección del Propietario-Inquilino (Civil Court, Landlord-Tenant part) en su condado.**

Si una suspensión de su desahucio por orden de la Corte está en efecto, usted será desalojado solo si la suspensión caduca o la anula. Si la Corte ha ordenado ya que usted puede ser desalojado si no cumple con hacer un pago o con la orden de la Corte a partir de una fecha de vencimiento, su incumplimiento con el pago o con la orden de la Corte al llegar esa fecha puede resultar en su desahucio sin notificación adicional.

Si usted depende de una persona que pertenece al Servicio Militar de los Estados Unidos, notifíqueselo inmediatamente al Secretario de la Corte (Court Clerk) para así proteger sus derechos legales.

Si usted necesita ayuda legal, la Sociedad de Ayuda Legal (Legal Aid Society) tal vez puede ayudarlo (consulte la guía telefónica de su condado). Una persona de edad avanzada que necesita ayuda legal puede comunicarse con el Departamento para Personas Mayores de la Ciudad de New York, 2 Lafayette Street, New York, New York 10007. (212) 422-1000.

Si usted recibe asistencia pública, notifíquelo a su trabajador social (caseworker) inmediatamente. La administración de Recursos Humanos tal vez puede ayudarle con los pagos atrasados, reciba usted o no asistencia pública.  Llame el **(877)  472-8411**  para información.

1  Formerly known as "72-hour notice." Additional time has been allowed for mailing.
   Anteriormente conocido como "Aviso de Desahucio de 72 Horas."  Se ha concedido tiempo adicional para enviar por correo.
2  The date this notice shall be on or after the date the notice is mailed to the respondent.
   La fecha de ésta notificación se fijara el día en que se le envía al apelado o despues de ese día.

**Regular Mail**

CIVIL COURT OF THE CITY OF NEW YORK

COUNTY **NEW YORK**

INDEX NO. L/T **79584/17**

MARSHAL'S DOCKET NO. **17059**

**JP MORGAN CHASE BANK NATIONAL ASSOCIATION**

Petitioner
*Landlord*

against

Respondent
*Tenant*

**JANE DOE
329 W 108TH STREET   # Rooms: ALL
NEW YORK, NY 10025
UNIT 1B**

*"John and Jane Doe"*   Respondent
*Undertenant*

**City Marshal**

**EDWARD F. GUIDA JR. #14
47-26 104TH STREET
CORONA, NY 11368
(718) 779-2134**

*Name of Tenant and/or undertenant being fictitious and unknown, person intended, occupying apartment set forth below.*

<u>**IMPORTANT**</u>   **- PLEASE BE ADVISED YOUR EVICTION MAY TAKE PLACE ON**   **OR THEREAFTER,**
**UNLESS STAYED PER COURT ORDER.**

<u>**IMPORTANTE**</u>   **- USTED PUEDE SER DESHAUCIADO, EN FECHA**   **O DESPUES,**
**A MENOS QUE POSEA UNA ORDEN DE LA CORTE.**

**08/15/2018**

# N O T I C E   O F   E V I C T I O N

Alternative Service / Mailing

To the above named tenants and undertenants:

Please take notice that the Court has issued a warrant for your eviction. If you fail to vacate the described premises, **YOU MAY BE EVICTED, WITHOUT FURTHER NOTICE, ON** <u>**THE SIXTH BUSINESS DAY**</u> **AFTER THE DATE OF THIS NOTICE** or any business day thereafter. "Business days" are Monday through Friday except legal holidays.

The <u>**ONLY**</u> **way you can stop this eviction is if a Court issues an order to show cause that stays your eviction. You may apply for such an order at the civil court, Landlord - Tenant part, in your borough.**

If a Court stay of your eviction is in effect, you will be evicted only if the stay ends or is vacated by the Court. If the Court has already ordered that you may be evicted if you fail to make payment or comply with the Court's order by certain date, your failure to pay or comply with the Court's order by that date may result in your eviction without further notice.

If you are dependent upon a person in the military service of the United States, advise the clerk of the Court immediately in order to protect your rights.

If you need legal assistance, the Legal Aid Society may be able to assist you (check telephone listing in your borough). A senior citizen who needs legal assistance may contact the New York City Department for the Aging, 2 Lafayette Street, New York, New York 10007, (212) 442-1000.

If you receive public assistance, notify your caseworker immediately. The Human Resources Administration may be able to help you with back payments whether or not you receive public assistance.
Call **(877) 472-8411** for information.

## DATE OF NOTICE                              FECHADA

**08/07/2018**

# NOTIFICACION DE DESAHUCIO

Notificación Alterna / Postal

A los susodichos inquilinos y sub-inquilinos:

Tenga a bién notar que la Corte ha emitido una orden de desahucio en contra de usted. Si no desaloja al local descrito, **USTED PUEDE SER DESAHUCIADO, SIN NOTIFICACION ADICIONAL,** <u>**EL SEXTO DIA HABIL**</u> **A PARTIR DE LA FECHA DE ESTA NOTIFICACION** o en cualquier día hábil de ahi en adelante. Los "dias habiles" son Lunes a Viernes, excepto los dias de fiesta legales.

Usted puede detener este desahucio **SOLAMENTE si una corte emite una orden judicial instruyendole a usted a mostrar motivos justificantes para suspender su desalojo. Usted puede solicitar esa order (Order to Show Cause) en la Corte Civil, Sección del Propietario-Inquilino (Civil Court, Landlord-Tenant part) en su condado.**

Si una suspensión de su desahucio por orden de la Corte está en efecto, usted será desalojado solo si la suspensión caduca o la Corte la anula. Si la Corte ha ordenado ya que usted puede ser desalojado si no cumple con hacer un pago o con la orden de la Corte a partir de una fecha de vencimiento, su incumplimiento con el pago o con la orden de la Corte al llegar esa fecha puede resultar en su desahucio sin notificación adicional.

Si usted depende de una persona que pertenece al Servicio Militar de los Estados Unidos, notifiqueselo inmediatamente al Secretario de la Corte (Court Clerk) para asi proteger sus derechos legales.

Si usted necesita ayuda legal, la Sociedad de Ayuda Legal (Legal Aid Society) tal vez puede ayudarlo (consulte la guía telefónica de su condado). Una persona de edad avanzada que necesita ayuda legal puede comunicarse con el Departamento para Personas Mayores de la Ciudad de New York, 2 Lafayette Street, New York, New York 10007: (212) 422-1000.

Si usted recibe asistencia pública, notifíquelo a su trabajador social (caseworker) inmediatamente. La administración de Recursos Humanos tal vez puede ayudarle con los pagos atrasados, reciba usted o no asistencia pública. Llamé al **(877) 472-8411** para información.

Formerly known as "72-hour notice." Additional time has been allowed for mailing.
Anteriormente conocido como "Aviso de Deshaucio de 72 Horas." Se ha concedido tiempo adicional para enviar por correo.
The date this notice shall be on or after the date the notice is mailed to the respondent.
La fecha de ésta notificación se fijara el día en que se le envia al apelado o despues de ese día.



#  Washington Mutual

## LOAN SECURITY AGREEMENT

Loan No.: ▮▮▮▮▮▮▮▮▮▮

**1.   PARTIES:** This Agreement, made as of May 11, 2005, between SOPHIE CAHEN

residing at
329 WEST 108TH STREET APT 1B, NEW YORK, NY 10025

(called the "Borrower"), and WASHINGTON MUTUAL BANK, FA (called the "Lender"), a federal savings bank organized and existing under the laws of the United States of America, and having its principal place of business at 400 E. MAIN ST., STOCKTON, CA 95290.   If more than one person enters into this agreement with the Lender, they together shall be known as the "Borrower," and either one or any one of them may be made to pay the full amount due under this Agreement.

**2.   NOTE:** Borrower has signed a note (called the "Note"), payable to the order of the Lender in the principal sum of $ 1,190,000.00, with interest as described in the Note.

**3.   STOCK AND LEASE:** Borrower is the owner and holder of 100 shares of capital stock (called the "Stock") of   329100 OWNERS' CORP (called the "Corporation"), and is a tenant under a Proprietary lease (called the "Lease"), dated DEC 16, 2003               between the Corporation, as landlord and SOPHIE CAHEN
now as tenant. The Lease and Stock relate to and are allocated for apartment #   1B (called the "Apartment") in the premises commonly known as
329 WEST 108TH STREET, NEW YORK, NY 10025

**4.   PLEDGE OF STOCK:** To insure the payment of the Note, the Borrower, by this Loan Security Agreement, gives to the Lender a security interest in the shares of the Corporation, represented by the Stock issued to the Borrower, together with all increases, profits, proceeds, additions and substitutions for the Stock.   A security interest means that if the Borrower does not pay the Note as required the Lender may sell the stock and apply the proceeds to any sums due.   If an Event of Default occurs (see "Events of Default" section below) and the Lender demands repayment in full, the Borrower appoints the Lender as his or her proxy with full power to attend all shareholder meetings and exercise all rights of a voting shareholder of the Stock.   Borrower will not revoke or withdraw this appointment without the written consent of the Lender.

**5.   ASSIGNMENT OF LEASE:** As additional security for the Note, Borrower by this Loan Security Agreement assigns the Lease to the Lender and gives the Lender a security interest in it.   This means that the Lender may sell or transfer the Lease and apply the proceeds to the payment of any sums due under the Note, if there is an Event of Default.

**6.   ASSIGNMENT OF RENTS:** Borrower hereby assigns any and all rents that he has a right to collect from any occupant who may occupy the apartment under which the Borrower is the tenant under the Lease assigned to the Lender.   The Lender shall exercise its right to receive rent only in the event of a default by the Borrower under this agreement or any of the accompanying documents executed by the Borrower and calls, without the requirement of the execution of any additional writing.
Borrower further agrees that upon the request of the Lender the Borrower will deposit with the Lender the security taken from any occupant of the Apartment.   Lender will agree in such event to hold the security in a segregated interest bearing account.

Printed: 8/15/2011

7.  **FINANCING STATEMENTS**:  The Borrower gives the Lender permission to file or renew financing statements at Borrower's expense without the Borrower's signature on it.  A financing statement is a notice of the Lender's security interest filed in the public records.

8.  **REPRESENTATIONS**:

(a)  The Borrower represents that he/she has used the entire proceeds of the loan made to him/her this day for the purpose of purchasing the shares of Stock and Lease allocated to the apartment identified herein or for the purpose of refinancing an existing ownership.

(b)  Borrower states that he/she is the lawful owner of the Stock and the Lease, that there are no claims of any kind against them, and that he/she has full right to give these security interests to the Lender.

(c)  The Borrower will obey all the terms of the Lease and will defend the Lease and Stock against all claims and demands by any persons who claim an adverse interest.

(d)  The Borrower will not sell, transfer, pledge or assign the stock or the Lease, or attempt to do so without the Lender's prior written consent.

(e)  The Lender may file or record the Lease and/or this Loan Security Agreement if it decides this is necessary to protect its interest, and the Borrower agrees to pay for all filing fees, mortgage tax, or any other official fees that may result from this.

(f)  The Borrower has delivered to the Lender the original certificate of Stock and the original Lease and the Borrower will not attempt to replace them or change his/her interest as represented by the original Stock certificate and the original Lease Agreement.

(g)  Borrower agrees to make all payments of principal and interest under the terms of the Note.

9.  **EVENTS OF DEFAULT**:  If any of the following Events of Default occurs, the Lender will have the right to demand the principal balance and interest on the Note immediately due and payable, and the Lender will have the right to sell the Stock and the Lease, and to use any other legal means to enforce its interest.

(a)  The Borrower refuses to deliver immediate possession of the Lease or the Stock or any replacements, modifications, additions, proceeds, or substitutions for them.

(b)  The Borrower fails to pay the full amount of each monthly payment on time, then the Lender may send the Borrower a written notice telling Borrower that if he/she does not pay the overdue amount by a certain date, the Borrower will be in default.  That date must be at least 30 days after the date on which the notice is mailed to the Borrower or if it is not mailed, 30 days after the date on which it is delivered to the Borrower.  If the Borrower does not pay the overdue amount by the date stated in the notice above mentioned, the Borrower will be in default.

(c)  The Borrower fails to pay when due, the rent, maintenance charges, or other payment of money required under the Lease.

(d)  The Borrower breaks any of his/her promises under the Note, the Lease, or this Loan Security Agreement.

(e)  The Lease is cancelled by the Corporation or is in any other way terminated.

(f)  The Borrower has made any false or misleading statements in connection with this transaction.

(g)  The Borrower files bankruptcy or any other legal action is begun so Borrower can avoid his/her debts.

(h)  The Borrower sells or assigns his interest in the Stock or Lease.

(i)  The Borrower leases the apartment to someone else without the prior written consent of the Cooperative Corporation and the Lender.

(j)  The Borrower fails to furnish a statement as required in the Status Certificate section below.

(k)  One of the events in the Corporate Insecurity section below occurs.

10.  **NOTICE OF DEFAULT AND SALE**:  If one of the Events of Default above occurs and the Lender decides to demand payment in full, then the Lender will send a written notice that the principal sum and all interest is due and payable immediately.  This notice will be sent by mail, to the Borrower at the Apartment.  If Borrower fails to pay the amounts due within ten (10) days of the mailing date of the notice, Lender shall have the right to sell or assign the Stock and Lease for cash, upon credit, or for future delivery and exercise any other rights legally available to it.  Any such sale may be public or private, with or without advertisement.

The Lender shall give Borrower ten (10) days written notice of its intention to make any such public or private sale, which shall be deemed reasonable notice, and such notice shall state the time and place fixed for the sale. Any sale shall be held at such time or times within ordinary business hours and at such place or places, as the Lender may fix in the notice, provided that the Lender shall not be obligated to make any sale pursuant to any such notice. The Lender may, without notice or publication, adjourn any sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to which it may be so adjourned. In case of any sale of the Stock and Lease on credit or for future delivery, the Stock and Lease may be retained by the Lender until the selling price is paid by the Purchaser but the Lender shall not incur any liability in case of the failure of the Purchaser to take up and pay for the Stock and Lease and, in case of any such failure, the Stock and Lease may again be sold. The Lender, however, instead of exercising the power of sale conferred upon it by this Agreement, may proceed by a suit or suits at law or in equity to foreclose the pledge and sell the Stock and Lease. In case of any sale, the Lender may first deduct all expenses of sale and delivery of the Stock and Lease, including, but not limited to reasonable attorney's fees, brokerage commissions and transfer taxes, and also all sums paid to the Corporation pursuant to the terms of the Lease or, upon termination of the Lease pursuant to any new lease issued in replacement of the Lease, and may then apply the remainder to any liability of Borrower under the Note and this Agreement, and shall return the surplus, if any, to Borrower.

Borrower agrees that the Lender shall have the right to continue to retain the Stock and Lease until such time as the Lender in its reasonable judgment believes that an advantageous price can be secured for same and the Lender shall not be liable to Borrower for any loss in the value of the Stock and Lease by reason of any delay in its sale.

The Lender has the right to purchase the Stock and Lease, in which case the Borrower waives all claims thereto.

Any sale conducted upon the foregoing terms shall be deemed "commercially reasonable."

**11. APPOINTMENT OF RECEIVER:** The Borrower agrees that if any action to foreclose the Lender's security interests is brought, the Lender is entitled to the appointment of a receiver and Borrower need not be notified.

**12. SALE BY BORROWER AFTER DEFAULT:** The Lender agrees that if the sale of the Stock is not begun within 90 days after one of the Events of Default above occurs and after the Lender has demanded repayment in full under the Note, the Borrower may arrange for a sale of the Stock and Lease provided he or she can give satisfactory proof to the Lender that all the sums remaining due and owing will be paid in full. By permitting the Borrower to sell his or her interest, the Lender does not give up any of its rights under this Loan Security Agreement, including the right to collect any sums due and owing after the sale.

**13. COMPLETION OF DOCUMENTS:** In connection with any sale or disposition of the Stock or the Lease, the Lender shall have the right to complete the incomplete Stock Power and Assignment of the Lease (which are given along with this Loan Security Agreement) to provide the Lender with additional security) for the purpose of transferring the Stock and the Lease. The Borrower agrees that the Corporation, its officers, agents or attorneys, shall not be liable to the Borrower in the event the Corporation transfers the Borrower's Stock and the Lease under the provisions of this Loan Security Agreement, or brings any proceeding to dispossess or evict the Borrower from the Apartment by reason of the occurrence of an Event of Default under this Agreement. The Corporation may not consent to a transfer of the Borrower's Stock or Lease without the prior written approval of the Lender.

**14. STATUS CERTIFICATE:** The Borrower agrees to furnish within ten (10) days of the Lender's request, a signed statement of the amount due on the Note and whether any offsets or defenses exist against the Note.

**15. CORPORATE INSECURITY:** The Borrower agrees that it is an Event of Default (see "Events of Default" section above) if one or more of the following occur (1) the Corporation fails to pay any mortgage payments or real estate taxes it is obligated to pay (2) the Corporation fails to insure the building of which the Apartment is a part against fire and other hazards a mortgage lender may require or the Corporation fails to carry liability insurance in a reasonable amount; (3) a bankruptcy, foreclosure or insolvency action is brought by or against the Corporation; or (4) the building of which the Apartment is a part is destroyed or substantially damaged.

**16. SURRENDER OF POSSESSION:** The Borrower understands that if any sale of the Stock and Lease occurs under this Loan Security Agreement, the Borrower will vacate and surrender the Apartment on demand and the Lender will have the right to maintain summary or other proceedings to obtain possession if the Borrower shall fail or refuse to give possession.

**17. PAYMENTS FOR BORROWER'S ACCOUNT:** The Lender, at its option, may make any payments for the Borrower's account, or do any action required to be done in order to prevent a default in or breach of the Lease. In the event the Lender makes any payments or acts on behalf of the Borrower, such payments or other expenses, together with interest on them at the rate stated in the Note, will be added to the amount owed under and secured by this Agreement and shall be payable to the Lender by the Borrower on demand.

**18. REIMBURSEMENTS FOR EXPENSES:** If any action or proceeding is started by the Lender, by the Borrower, or anyone else, or if the Lender is made a party in an action or proceeding to foreclose, uphold or defend the security interests or other rights granted to Lender by this Loan Security Agreement, all sums paid by the Lender for the expenses of any such action (including reasonable attorney's fees), together with interest on the expenses at the rate stated in the Note, shall be added to the amount owed under and secured by this Loan Security Agreement and shall be payable to the Lender by the Borrower on demand.

**19. ADDITIONAL CHARGES:**

(a)  In the event any government agency imposes any charge on the sale, transfer or on a loan made upon the Stock and Lease, then, at the option of the Lender, the Borrower shall pay such charge imposed that, in the opinion of the Lender, would be required to protect its interest in the Stock and Lease.

(b)  Should the Note or other obligation secured by this Loan Security Agreement require Borrower to pay a prepayment charge if the Note or obligation is prepaid, then Borrower agrees to pay such a charge as required in the Note or obligation to the extent permitted by applicable law. Borrower also agrees that if the Note or obligation is declared due and payable by Lender upon default by Borrower, Borrower will pay the full amount of the prepayment charge that Borrower would be required to pay if Borrower were prepaying the Note or obligation in full.

**20. APPLICABLE LAW:** This Agreement is ruled and governed by New York Law. If any provision in this Loan Security Agreement is found to be illegal, the rest of the Loan Security Agreement will still be binding and effective. This Loan Security Agreement is subject to the trust fund provisions of Section 13 of the New York Lien Law.

**21. BORROWER'S RIGHT TO APARTMENT AND STOCK:** Until Borrower is in default, only Borrower shall have all the rights and privileges of a shareholder of the Corporation and as a Proprietary Lessee. Also, Borrower will have sole responsibility for the performance of all obligations of a shareholder and a Proprietary Lessee. Lender will have no responsibility under the Proprietary Lease.

In the event of any claim arising between the Borrower and the Corporation, or any party other than the Lender with respect to the Apartment, the building, or the Stock and Lease, the Borrower will not assert any claim, demand or offset against Lender.

If the Corporation makes any distribution of Capital, Lender will be entitled to receive this distribution, which shall be applied in reduction of Borrower's Debt.

**22. INDEMNIFICATION OF THE LENDER:** Borrower understands that if the Lender shall be liable to the Corporation pursuant to the terms of the Recognition Agreement executed in connection with this loan, Borrower agrees to indemnify the Lender for any damages sustained by it.

**23. NON-LIABILITY OF CORPORATION:** The Corporation will not be liable to the Borrower if it transfers the Stock and Lease as required by this Agreement or if it refuses to transfer the Stock and Lease to another person without Lender's consent.

**24. RIGHT TO ASSIGN THIS AGREEMENT:** Borrower understands that Lender has the right to assign this Agreement and the Stock and Lease without notice to Borrower and without Borrower's consent.

100126/2018 ORDER declined to sign

**25. PROCEDURE UPON SALE BY BORROWER:** If Borrower sells the stock and transfers the Proprietary Lease, Borrower will repay in full all amounts which Borrower owes under the Note and this Agreement by a certified or bank check, payable to Lender.

Upon receipt of payment in full, Lender will deliver the Stock Certificate and the Proprietary Lease to Borrower provided Borrower has paid the reasonable attorney's fees for the preparation of any required UCC-3 Financing Statement.

Should Borrower request a personal attendance for purposes of delivering the Stock Certificate and Proprietary Lease, Borrower agrees to pay a fee for such attendance in addition to the fee for preparation of the UCC-3 Financing Statement.

**26. WAIVER OF JURY TRIAL:** Both Lender and Borrower agree to waive trial by jury in any action arising out of or connected with this Agreement, the relationship created by this Agreement, or the Stock and Lease, except as prohibited by statute.

**27. CUMULATIVE REMEDIES:** The rights, remedies, and benefits specified in this Agreement are cumulative and are not exclusive of any rights, remedies or benefits which the Lender may otherwise have and no delay or failure on the part of the Lender in exercising any power or right under this Agreement shall operate as a waiver of such power or right.

**28. NOTICES:** Unless otherwise mentioned in this Agreement, Lender may send any notice to Borrower by regular mail, at the Apartment, unless Borrower notifies Lender in writing, of a change of address. Borrower will send any notice to Lender at Lender's address as herein above set forth.

**29. CHANGE OF TERMS:** The terms of this Agreement may not be changed orally but only by a written agreement signed by the party to be charged.

**30. ARBITRATION:**

(a) From time to time, Borrower and Lender may have a disagreement about Lender's loan to Borrower ("the Loan"), or about this Agreement, the Note, or any other document relating to this Agreement or the Note (all these documents are called the "Loan Documents"). If as a result of this disagreement: (1) Borrower or Lender requests the other in writing for money to compensate it for any harm suffered, and (2) such request, if it has merit, could be granted by a court under applicable law, then both Borrower and Lender agree not to take their disagreement (a "Dispute") before such a court, instead, the Dispute will be taken to one or more private unofficial persons to be resolved. These private unofficial persons are called "arbitrators," and the process by which they resolve the Dispute is called "arbitration." Subject to the terms of subparagraph (b) below, arbitration will be the only way Borrower and Lender will resolve their Disputes. It is important to understand that by going to arbitration, BORROWER AND LENDER WAIVE CERTAIN IMPORTANT RIGHTS, SUCH AS THE RIGHT TO A TRIAL BY JURY. IN FACT, THE DECISION OF AN ARBITRATOR IS USUALLY FINAL AND BINDING, AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT OF LAW.

Disputes between Borrower and Lender about the Loan or the Loan Documents include those between the employees, officers, directors, attorneys and agents of Borrower and Lender. Any arbitration between Borrower and Lender will take place in the state where the apartment that is the subject of the Lease is located, unless we both agree otherwise. It will be conducted in accordance with what is known as the "Commercial Financial Disputes Rules" of the American Arbitration Association ("AAA"), as those rules are modified by this paragraph 30 (the "Rules").

(b) Even though we both agree to submit our disputes to arbitration, this does not mean that the following actions ("Permitted Actions") cannot be taken by each of us outside of arbitration to the extent they are made available to the party taking the action under the Loan Documents or any other agreement between us:

(1) obtain from a court various remedies, known as equitable remedies, such as the appointment of a receiver, the attachment of property or the issuance of an injunction forcing or preventing either of us from doing something;

100126/2018 ORDER declined to sign

(2) exercise so-called "self-help" remedies, such as repossession of property; or

(3) foreclose on this Agreement or any other collateral security for the Loan.

These Permitted Actions may be taken before, during or after any arbitration has started or ended between us. If Borrower or Lender takes any Permitted Action, it does not mean that either of us waives our right or obligation to submit our other Disputes to arbitration. If Borrower and Lender should have a Dispute, and it is unclear whether the Dispute should be taken to arbitration, the question of whether it should be taken to arbitration will be determined by the arbitrator(s).

(c) If any arbitration between Borrower and Lender should involve claims and counterclaims in total less than $500,000, the arbitration will be decided by one neutral arbitrator selected under the Rules of the AAA. The arbitrator must be either a lawyer with at least 10 years of experience in real estate or a retired judge, and the arbitration will proceed under what is known as the "Expedited Procedures" of those Rules.

If any arbitration between Borrower and Lender should involve claims and counterclaims in total of $500,000 or more, the arbitration will be decided by 3 neutral arbitrators. Two of these neutral arbitrators must fall into 1 of the following 3 categories, and at least one of them must fall into one of the first two categories: (1) a lawyer with at least 10 years of experience in real estate; (2) a retired judge; or (3) a person with at least 10 years of experience in lending.

(d) Even though we agree to arbitrate our Disputes, various doctrines that apply to court proceedings will apply to our arbitration. These doctrines include those known as "waiver," "estoppel," "laches" and the "statute of limitations." To fully understand these doctrines, it is best to consult with a lawyer. For the purpose of these doctrines, starting an arbitration will be treated the same as starting a court action.

In any arbitration between Borrower and Lender, each of us will have the right to take the deposition of one individual, and any expert witness identified by the other of us. Any additional "discovery" can be taken only if your arbitrator(s) decides it is necessary because of substantial need.

Either Borrower or Lender may ask the arbitrator(s) to dismiss the arbitration or otherwise resolve the Dispute at any time. This means that the arbitrator(s) may decide that there is no need to resolve the Dispute, or that the arbitrator(s) may reach a conclusion without hearing any witnesses, or reviewing any depositions, or conducting a live hearing.

At least 30 days before any arbitration, Borrower and Lender must give to one another copies of all information that will be provided to the arbitrator(s). This information must include a list of all witnesses, including any experts, that may appear before the arbitrator(s). Because Lender is a federal savings bank and your Loan involves interstate commerce, all of our agreements in this paragraph 30 are governed by a federal law known as "The Federal Arbitration Act." Such law may be found in Title 9 of the U.S. Code, and should be consulted for reference.

(e) The Loan Documents have provisions relating to who pays which costs. The arbitrator(s) will honor those provisions. If an arbitration is based upon a Dispute raised by Lender, Lender will pay any arbitration filing fee required by the AAA. If an arbitration is based upon a Dispute raised by Borrower, Lender will pay on behalf of Borrower, 1/2 of any arbitration filing fee required by the AAA. However, if Borrower does not win the arbitration, the portion of the filing fee paid by Lender on behalf of Borrower will be considered a loan to Borrower, and Borrower will be obligated to pay such amount to Lender. While the Loan is outstanding, Borrower's obligation to pay this amount will be secured by this Agreement.

Any decision by the arbitrator(s) can be enforced by an appropriate court. Among other things, this means that the judgment of the arbitrator(s) may be entered in such court's records for purposes of later enforcing the judgment.

(f) This paragraph 30 will continue in effect even after this Agreement is terminated, satisfied, invalidated or reconveyed. If any provision of this paragraph 30 differs from that of any other Loan Document, the provisions of this paragraph 30 will control.

The Borrower has signed this Loan Security Agreement on the date above written.

X _____
SOPHIE CAHEN

X _____

X _____

X _____

------------------- [Space Below This Line For Acknowledgment] -------------------

STATE OF NEW YORK, _____NASSAU_____ County ss:

On this   11TH DAY OF MAY, 2005                            before me personally
came       SOPHIE CAHEN

to me known and known to me to be the individual(s) described in and who executed the
foregoing instrument, and s he_  duly acknowledged to me that s he_  executed the
same.

_____
                                    Notary Public

HELEN KAUFMAN
Notary Public, State of New York
No., 01KV6036246
Qualified in Nassau County
Commission Expires March 27, 20 O6

100126/2018 ORDER declined to sign

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2013011501007001001EF16F

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2013011501007001 | Document Date: 05-20-2005 | Preparation Date: 01-15-2013 |
| Document Type: UCC3 ASSIGNMENT | | COOPERATIVE |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING | NATIONWIDE TITLE CLEARING |
| 2100 ALT 19 NORTH | 2100 ALT 19 NORTH |
| PALM HARBOR, FL 34683 | PALM HARBOR, FL 34683 |
| 727-771-4000 | 727-771-4000 |
| nicole_baldwin@nwtc.com | nicole_baldwin@nwtc.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1893 | 6 | Entire Lot | 1B | 329 WEST 108 STREET |

Property Type:  SINGLE RESIDENTIAL COOP UNIT

**CROSS REFERENCE DATA**

CRFN: 2005000295733

**PARTIES**

| DEBTOR: | SECURED PARTY: |
|---|---|
| SOPHIE CAHEN | WASHINGTON MUTUAL BANK, FA |
| 329 WEST 108TH STREET | 400 EAST MAIN STREET |
| NEW YORK, NY 10025 | STOCKTON, CA 95290 |

x  Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    01-28-2013 15:53 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 40.00 | 2013000037155 | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*

Page 45 of 1

100120/2018 ORDER declined to sign

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2013011501007001001CF3EF

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2013011501007001 | Document Date: 05-20-2005 | Preparation Date: 01-15-2013 |
| Document Type: UCC3 ASSIGNMENT | | |

**PARTIES**
**NEW SECURED PARTY:**
JPMORGAN CHASE BANK NA
700 KANSAS LANE, MC 8000
MONROE, LA  71203

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
E. Lance  (727) 777-4000 ext 275

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
1022735841 JPCAS NY New York
B: 1893 L:6 UNIT: 1B

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is |
|---|---|
| Bk:  Pg:  Instr#: 2005000295733 Date: 05/20/2005 | to be filed [for record] (or recorded) in the [X] REAL ESTATE RECORDS. |

2. [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [X] **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 6.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor  or  [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    [ ] DELETE name: Give record name to be deleted in item 6a or 6b.    [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| CAHEN | SOPHIE | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | | | |

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 700 Kansas Lane, MC 6000 | MONROE | LA | 71203 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [X] NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral [ ] deleted  or  [ ] added,  or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| WASHINGTON MUTUAL BANK, FA | | | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. **OPTIONAL FILER REFERENCE DATA**

1022735841 NTCID: 18778467 State: NY County: New York Debtor: SOPHIE CAHEN

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Printed: 8/15/2016

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

Bk: Pg: Instr#: 2005000295733 Date: 05/20/2005

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME | | |
|---|---|---|
| WASHINGTON MUTUAL BANK, FA | | |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

7a.Organization's Name
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Record Owner Name:
329108 OWNERS CORP.
329 WEST 108TH STREET
NEW YORK, NY 10025 - USA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT ADDENDUM (FORM UCC3Ad) (REV. 07/29/98)



### CERTIFICATE OF SALE AND OF FACT

Know all men by these presents: That by virtue of a default in the payment of certain monies due, and pursuant to the terms of a certain Security Agreement dated: May 16th, 2005 placed in my hands for execution and made by: Sophie Cahen, (Shareholder(s) to

JPMorgan Chase Bank, National Association, (Secured Party) that the attorney(s) for the Secured Party did on the 3rd day of September, 2014 in the manner provided by statute, sell at Public Auction by Victor Marino, Auctioneer, all the Shareholder(s) right, title and interest, in and to the collateral consisting of 300 shares of Capital Stock and the associated Proprietary Lease for Apartment No. 1B in the building known as and located at 319 West 105th Street, New York, NY 10025

And sold unto the Secured Party, JPMorgan Chase Bank, National Association

of _____

for the sum of $1,196,000.00 they being the highest bidder and in accordance with the Terms of Sale which were available to all bidders. That public notice of sale was given prior to its taking place and was duly advertised. That this Auction Sale was held at the Rotunda of the New York County Supreme Court Building, 60 Centre Street, New York, N.Y.

___XXX___ If sold to the Secured Party, no money exchanged hands except for the auctioneer's fees and expenses of the sale.

IN WITNESS WHEREOF, I have hereunto set my hand on the 3rd day of September, 2014

_____
Victor Marino

Pursuant to Section 2105 of the New York
Civil Practice Laws and Rules, I am an
attorney admitted to practice in the
courts of the state of New York. I
hereby certify that this is a true
and complete copy of the original.

_____
Attorney